UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

CIVIL ACTION NO. 14-74-EBA

JACQUELINE M. HAVENS,                                                                                    PLAINTIFF,

V.                              MEMORANDUM OPINION AND ORDER

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,                                                      DEFENDANT.

   The Commissioner of Social Security [Commissioner], denied Jacqueline M. Havens' application for Disability Insurance Benefits and Supplemental Security Income benefits. Seeking judicial review in this action under 42 U.S.C. § 405(g), Havens claims that the decision was not based upon substantial evidence, and that the Commissioner erred as a matter of law in denying her claim for benefits. Havens states that the Administrative Law Judge [ALJ] gave no consideration or weight to the opinion of her treating physician, Dr. James Frederick, and that the ALJ failed to accurately describe Havens' Residual Functional Capacity. [R. 16]. However, upon a review of this matter and the claims raised, the Court finds no error and affirms the ALJ's denial of benefits.

BACKGROUND

   In order to determine whether Havens is disabled and therefore entitled to receive benefits, the Administrative Law Judge [ALJ] employed a five step sequential evaluation analysis set forth in 20 C.F.R. 404.1520(a) and 416.920(a). [R. 8-1, p. 186]. At step one, the ALJ determined that Havens had not engaged in substantial gainful activity since the alleged onset of her disability, October 1, 2010. [R. 8-1, p. 187]. At step two, the ALJ considered whether Havens suffered from a medically determinable impairment or combination of

impairments that was "severe" in that it significantly limited her ability to perform basic work activities. [R. 8-1, p. 186-87]. In this case, the ALJ found that Havens suffered from the following severe impairments: chronic pain syndrome; degeneration of the lumbar intervertebral discs; lumbar radiculopathy and disc protrusion; left shoulder impingement syndrome and arthritis; anxiety disorder; and history of major depressive disorder. [R. 8-1, p. 187]. Step three of the evaluation involves determining whether Havens' impairment or combination of impairments is severe enough to meet or medically equal the criteria of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). [R. 8-1; p. 18]. If Havens meets the criteria of a listing, she is disabled. In this case, the ALJ determined that although she was found to have severe impairments, they did not, either singly or in combination, meet or medically equal the severity of one of the listed impairments. [R. 8-1, p. 188-90]. At this stage of the analysis, having been found without qualifying disability, the ALJ reviewed the evidence in Havens' case, and arrived at a Residual Functional Capacity, as required by 20 C.F.R. 404.1520(e) and 416.920(e). [R. 8-1, p. 190-94]. In doing so, the ALJ found:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of sedentary work as defined in 20 C.F.R. 404.1567(a). She can stand/walk for a total of two hours out of an eight-hour workday; sit for a total of six hours out of an eight-hour workday; and can occasionally reach, push, or pull with the left upper extremity. She can occasionally climb, balance, stoop, kneel, or crouch but should never crawl. She should avoid concentrated exposure to humidity; hazards, such as unprotected heights and moving machinery; and irritants, such as fumes, gases, odors, dust, and poorly ventilated areas. She cannot perform piecework because of difficulty with concentration and is limited to work involving one, two, or three step instructions.

[R. 8-1, p. 190]. Given this residual functional capacity, the ALJ considered whether Havens

was capable of performing the requirements of her past relevant work, meaning work performed either as she actually performed it or as it is generally performed in the national economy, within the last fifteen years or fifteen years prior to the date of her disability, as required by 20 C.F.R. 404.1520(f) and 416.920(f). In this case, the ALJ found that Havens was unable to perform her past relevant work as a nursing assistant at a physician's office, a phlebotomist, or receptionist at a dental practice, as these jobs ranged from sedentary to medium exertional work, sometimes performed as heavy work and semi-skilled. Further, the ALJ commented that these past jobs required constant postural demands, which Havens is unable to perform. [R. 8-1, p. 194-95].

Given these findings, at the final step in the sequential evaluation, step five, the ALJ considered whether Havens is able to do any other work in light of her residual functional capacity, age, education, and work experience. 20 C.F.R. 404.1520(g); 416.920(g). The ALJ found that she was not disabled as there exist jobs in significant numbers in the national economy that she can perform. In order to make this finding, the ALJ relied upon the testimony of a vocational expert, who stated that given all of the factors articulated by the ALJ, Havens would be able to perform the requirements of other sedentary work, such as inspector and surveillance system monitor. [R. 8-1, pp. 195-96]. As a result, the ALJ found that Havens was not disabled and denied her application for benefits.

## ANALYSIS

Havens claims that in weighing the medical evidence in this case the ALJ gave no consideration or weight to the opinion of her treating physician, Dr. James Frederick, an error which she claims renders the ALJ's opinion lacking the support of substantial evidence. The United States, however, contends that the opinions on which Havens relies came, not from Dr.

3

James Frederick, but from Melissa Frederick, an advanced practice registered nurse [APRN], with Dr. Frederick's office. Consequently, Ms. Frederick's opinions are not entitled to the weight that must be accorded to opinions of acceptable medical sources such as treating physicians.

 The plaintiff, in support of her position, cites to the Court the case of Walton v. Astrue, 773 F.Supp.2d 742 (N.D. Ohio 2011). In Walton, the claimant asserted that the Commissioner's decision denying benefits was in error as the ALJ failed to properly evaluate objective medical evidence from two treating physicians. The Court agreed stating that "the ALJ's failure to follow the procedural requirement 'of identifying the reasons for discounting the opinion and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" Id. at 748 (citing Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 243 (6th Cir. 2007)). A review of Havens case, however, shows the distinction between the present case and Walton.

 Havens was seen at the offices of Dr. Frederick on twelve occasions prior to the physician signing the assessment of ability to do work on 5/18/2011,. The records reveal that on ten of those occasions she was seen only by Melissa Frederick, a nurse. [R. 8-1, pp.502-519]. On occasions Havens seen by Dr. James Frederick, but only for left foot pain, a symptom which does not form the basis of her claim for disability. [R. 16, pp. 2-3]. Dr. James Frederick does not qualify as a treating physician. A physician qualifies as a treating source if the claimant sees him "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. In this case, Havens clearly did not see Dr. James Frederick with such a frequency and, as a result, Dr. James

4

Frederick cannot be determined to be a treating physician.

In addition, the record indicates that the opinions expressed in the assessment are those of the nurse, Melissa Frederick, and because she is not an "acceptable medical source" she cannot render a medical opinion or be considered a treating source whose opinion is entitled to controlling weight. See S.S.R. 06-03p, 2006 WL 2329939. Even so, Melissa Fredericks opinions regarding Havens functional capacity are opinions solely within the ALJ's purview. "After Step Three and before determining whether the claimant can perform her past work at Step Four of the Agency's sequential evaluation, the ALJ is required to assess a claimant's RFC. 20 C.F.R. § 404.1520(e). The RFC finding is an administrative assessment of 'what an individual can still do despite his or her limitations.' See 20 C.F.R. § 404.1545(a)(1); SSR 96–8p, 61 Fed.Reg. 34474, 34475 (1996). The ALJ's determination of a claimant's RFC is a legal decision rather than a medical one. See 20 C.F.R. § 404.1527(e); SSR 96–5p, 61 Fed.Reg. 34471, 34474 (1996). As such, the final responsibility for deciding issues such as RFC is reserved to the Commissioner. 20 C.F.R. § 404.1546." Walton, 773 F.Supp.2d at 747-48. Therefore, as the determination of Havens' residual functional capacity is a legal decision to be made by the ALJ, opinions by nurse Melissa Frederick are not controlling or binding upon the ALJ. Furthermore, as Melissa Frederick is not to be considered an acceptable medical source, or treating physician, her opinions are not entitled to the deference given to those of treating physicians.

However, even if the Court assumes, for the purpose of this analysis, that the ALJ erred in not addressing Ms. Frederick's opinions, such an error is harmless as her records do not provide evidence to support her limiting opinions. Melissa Frederick's records do not show a limited range of motion or other objective evidence of abnormality to support Havens' claims of

5

disability in this action. [R. 8-1, pp. 502-519]. Furthermore, they do not contradict the objective evidence of record upon which the ALJ relied to find her non disabled, and she is entitled to no relief on this claim. Consequently, the Court can find no error in how the ALJ weighed the medical evidence.

Havens' second and third claims in this action allege that at Steps 2 and 3 of the sequential evaluation process the ALJ found her to have severe impairments including anxiety disorder, a history of major depressive disorder, mild restrictions in activities of daily living, moderate difficulties in social functioning and moderate difficulties with regard to "concentration, persistence or pace." [R. 16-1, p. 10]. Havens claims, however, that in spite of these findings, the ALJ did not include a description of these limitations when determining the RFC at Steps 4 and 5 of the sequential evaluation process, when he merely stated: "She cannot perform piecework because of difficulty with concentration and is limited to work involving one, two, or three step instructions." [R. 8-1, p. 190]. The error in Havens claims is that she fails to recognize the distinct obligations of the ALJ as Steps 2 and 3, versus the ALJ's obligations at Steps 4 and 5. As will be discussed below, at Steps 2 and 3, the ALJ is charged with the obligation to determine whether a claimant suffers from severe impairments that require a finding of disability. If no such finding is warranted, at Steps 4 and 5, the ALJ must arrive at a residual functional capacity, which is a description of the most a claimant can do despite her impairments. In this case, the ALJ found Havens to have severe impairments that did not require a finding of disability. Then, the ALJ properly proceeded to determine her residual functional capacity - a description of the most Havens could do. Ultimately, the ALJ denied her claim for disability, and for the reasons that follow, the ALJ has properly complied with her obligations in

this case, and Havens is entitled to no relief.

Havens correctly cites the case of Ealy v. Comm'r of Soc.Sec., 594 F.3d 504 (6th Cir. 2010) for the proposition that functional limitations recommended by a physician whose opinions are adopted by an ALJ should be included in a properly formulated RFC. However, Ealy simply does not apply to the facts of this case. In the present case the ALJ described Havens' severe impairments of anxiety disorder, a history of major depression, and resulting moderate difficulties in social functioning at Steps 2 and 3. However, the ALJ also observed that she self-reported in her adult function report the ability to talk on the phone with family members; attend school functions involving her daughter about five times a year; and go shopping for groceries and other needed items for the household. [R. 8-1, p. 189]. As mentioned previously, there is a clear distinction between the ALJ's role when addressing impairments at Steps 2 and 3, versus later determining the residual functional capacity at Steps 4 and 5 of the sequential evaluation process.

When evaluating mental impairments under Steps 2 and 3, the regulations require that "we must first evaluate your pertinent symptoms, signs and laboratory findings to determine whether you have a medically determinable mental impairment(s). . . . If we determine that you have a medically determinable mental impairment(s), we must specify the symptoms, signs and laboratory findings that substantiate the presence of the impairment(s) . . ." 20 C.F.R. § 404.1520a. "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1).

In the instant matter, the ALJ, when addressing whether Havens had severe mental

impairments that met either singly or in combination one of the listed impairments at steps 2 and 3, found her to have severe impairments of anxiety disorder, a history of major depression, with resulting mild restrictions in activities of daily living, moderate difficulties in social functioning and moderate difficulties in concentration, persistence or pace. [R. 16-1, p. 10]. Because the impairments did not result in a finding of disability at steps 2 or 3, the ALJ proceeded with the evaluation. In the instant case, as required by Ealy, the ALJ then incorporated the findings of physicians she found to be properly supported by the objective medical evidence in the residual functional capacity at Steps 4 and 5, for a determination of the most that Havens could do despite her limitations. For instance, Dr. Genther concluded that despite her limitations, Havens could retain and follow simple instructions; carry out and persist at simple, repetitive tasks without special supervision; make simple, work-related decisions; and perform work allowing mildly limited attention, concentration, and ability to relate to employers, co-workers, and the public. [R. 8-1, p. 578-580]. In addition, Dr. Cutler opined that despite her limitations, Havens was able to perform tasks not requiring piecework. [R. 8-1, pp.296-97; 312-13]. These functional restrictions articulated by acceptable medical sources are clearly incorporated in the ALJ's residual functional capacity, where she states: "She cannot perform piecework because of difficulty with concentration and is limited to work involving one, two, or three step instructions." [R. 8-1, p. 190]. Simply, the ALJ properly complied with her obligations when making findings of impairment, and later, when formulating a residual functional capacity. Havens arguments to the contrary are unfounded.

## CONCLUSION

For the foregoing reasons, it is ORDERED that Plaintiff's Motion for Summary

Judgment [R. 16] be DENIED, Defendant Commissioner's Motion for Summary Judgment [R. 17] be GRANTED, and that Judgment be entered affirming the final decision of the Commissioner.

Signed May 7, 2015.

